Fred C. YANDLE, Hugh S. Yandle and William N. Yandle, individually and as co-partners, etc., Appellants,

v.

HARDWARE MUTUAL INSURANCE COMPANY, a corporation, et al., Appellees.

No. 17977.

United States Court of Appeals
Ninth Circuit.

March 11, 1963.

**436**

Augustus Castro, San Francisco, Cal., and Frank W. Finn, Sebastopol, Cal., for appellants.

George F. Jansen, San Francisco, Cal., for appellees.

Before ORR, BARNES and HAMLIN, Circuit Judges.

ORR, Circuit Judge.

In 1953 the Mast Lumber Company was engaged in the trucking business. It carried a comprehensive general and automobile liability insurance policy issued by St. Paul Mercury Indemnity Company. The policy provided that the insurer would pay on behalf of the insured all claims which the insured became obligated to pay by reason of liability imposed upon it by law for bodily injury or death. "Insured" is defined in the policy to mean the named insured or any other person, firm or corporation, while using or legally responsible for the use of the insured's vehicles, provided such use is with the permission of the named insured.

A certificate of insurance, with endorsements, was issued to Mast by Underwriters at Lloyds of London. This constituted excess liability insurance over the St. Paul policy and was subject to the same terms and conditions.

Also in effect at the time of the accident, hereinafter referred to, was an automobile garage liability policy issued by Hardware Mutual Casualty Company to one De La Forest. This policy provides coverage for all operations necessary or incidental to the conduct of the business of the De La Forest Garage, and the ownership, maintenance or use of any automobile in connection with the garage operations. This policy provides coverage for the insured and to any person while using an automobile covered by the policy and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.

With reference to a non-owned automobile, this policy affords coverage to the named insured and any other person or organization legally responsible for the use by such named insured of an automobile not owned or hired by such other person or organization.

The hereinabove described insurance policies, in 1953, were controlled by section 415 of the California Vehicle Code of 1935 (now section 16451 of the 1959 Vehicle Code). Under this section, a motor vehicle liability policy must "insure the person named therein and any other person using or responsible for the use of said motor vehicle, or motor vehicles with the express or implied permission of said assured."

In 1953 Mast, in the course of its operations, engaged De La Forest, the operator of a repair shop, to repair an axle from one of its truck-trailer units. De La Forest sublet the work to the Mark

Haines Welding Shop. This company "built up" the axle and then W. J. Yandle & Co. turned the axle on a lathe to the required size. So we have the axle removed from the trailer, welded by Mark Haines and then lathed by Yandle, returned to De La Forest and placed on the trailer. The truck and trailer were then returned to Mast and placed in use in the transportation business.

While the trailer was being hauled behind a truck on Highway 101 in Marin County, California, the repaired axle broke, and one set of dual wheels crossed the highway and landed on top of an automobile operated by one Donald Urban, inflicting injuries from which the said Donald Urban died. His widow on behalf of herself and minor child brought an action against Mast and De La Forest for damages for wrongful death. The action was settled and the amount agreed upon in the settlement was paid by the insurance companies.

Mast and De La Forest brought an indemnity action against Yandle and Wesley Temple, operator and owner of the Mark Haines Welding Shop. Thereafter, appellants instituted the instant action against the insurance companies alleging that they were insured by the policies.

In order to bring themselves within any of the above three policies, as supplemented by California public policy, appellants must show that they were persons using or responsible for the use of the vehicle involved in the accident.

The first question is whether the welding and machining of a trailer axle taken from a vehicle is *using* the vehicle within the meaning of the insurance policies. As generally understood, the word "use" means to make use of or to enjoy. See Wahler v. Thompson, 36 Misc.2d 847, 234 N.Y.S.2d 105 (1962); Black's Law Dictionary, Fourth Edition (1957); Webster's Third New International Dictionary (1961). We cannot say that one who repairs a trailer axle is enjoying or using a motor vehicle.

We agree with appellants that the word using is not synonymous with driving. A person is using a motor vehicle if he lets a friend drive it, Osborne v. Security Ins. Co., 155 Cal.App.2d 201, 318 P.2d 94 (1957); "use" has also been defined to mean loading and unloading of a motor vehicle. See Columbia So. Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange, 190 Cal.App.2d 194, 11 Cal.Rptr. 762 (1961). But we have found no case which goes so far as to say that the repair of an axle is the use of a motor vehicle; and we think it cannot be extended that far. Cf. Commercial Standard Ins. Co. v. Bacon, 154 F.2d 360 (10th Cir., 1946).

California courts have found persons responsible for the use of a motor vehicle on the theory of respondeat superior, Pleasant Valley Lima Bean Growers and Warehouse Association v. Cal-Farm Ins. Co., 142 Cal.App. 126, 298 P.2d 109 (1956) and parental control over a minor, Firkins v. Zurich General Accident and Liability Ins. Co., 111 Cal.App. 655, 295 P. 1051 (1931); cf. Osborne v. Security Ins. Co., supra. These situations are entirely different from the instant case where appellants are charged with responsibility in failing to exercise reasonable care in the repair of an axle taken from a trailer.

Appellants were not responsible for the use of the vehicle, but only for their defective work. Their liability for accidents arising out of the use of the vehicle is limited to their own negligence in the repair of the axle. This is quite different from the above cases where the person held responsible as a parent or master need not himself be guilty of negligence.

We conclude that appellants were not using the trailer or responsible for its use within the meaning of the insurance policies in question.

Affirmed.