## PERRY CLAY WILLIAMS v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 20 January, 1967.)

1. **Insurance § 47.1—**

In order for plaintiff insured to recover under an uninsured motorist provision of a policy he must show that he was legally entitled to recover damages from the owner or operator of an uninsured automobile for bodily injury caused by accident arising out of the ownership, maintenance or use of the uninsured automobile.

2. **Pleadings § 12—**

A demurrer admits for its purposes all facts well pleaded in the complaint, and the allegations of the complaint must be taken as true and liberally construed in favor of the pleader.

3. **Insurance § 3—**

While an insurance policy must be construed according to its terms in the absence of ambiguity, when there is ambiguity the policy will be construed in favor of coverage, and nontechnical terms will be given their ordinary meaning in the absence of evidence tending to show a contrary intent.

4. **Same—**

A policy of insurance will be construed as a whole with the purpose of giving effect to the intention of the contracting parties, and each word and clause will be given effect if possible by any reasonable construction.

5. **Insurance § 47.1—**

In this action on a clause of a policy providing coverage for injury to plaintiff insured caused by accident arising "out of the ownership, maintenance, or use" of an uninsured automobile, the allegations were to the effect that plaintiff, while underneath an uninsured vehicle, raised on blocks, making repairs, was injured when the owner removed a front wheel and the car fell or rolled upon plaintiff. *Held:* Repairs are a necessary incident to maintenance, and the allegations bring plaintiff within the coverage of the policy.

APPEAL by plaintiff from *Bone, E.J.,* 9 April 1966 Assigned Session of WAKE.

Civil action to recover under a policy of liability insurance.

Plaintiff instituted this action on 26 April 1965 and, in substance, alleged: That at the time he received the injury complained of he was married to Margaret Bissett Williams, and that he and his said spouse were residents of the same household. At said time there was in force a family automobile and comprehensive liability policy issued by defendant to plaintiff's spouse, which policy contained an "uninsured motorists insurance endorsement." Plaintiff, a mechanic, at the request of one James Harris Singletary, went to premises used by Singletary for the purpose of repairing an auto-

mobile belonging to Singletary. Upon arrival, he found the car up on blocks. After inspecting the blocks and satisfying himself that the automobile was secure, plaintiff crawled under the automobile to commence his work. While plaintiff was under the automobile, Singletary carelessly and negligently raised the automobile and removed the left front wheel, and as a result the automobile fell or rolled on plaintiff, causing serious bodily injury.

Singletary did not have liability insurance on the automobile, and plaintiff brought this action to recover under the uninsured motorists endorsement in the policy issued by defendant to plaintiff's spouse.

The policy contained, *inter alia,* the following:

INSURING AGREEMENTS

"I.  Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles

To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:

(a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the Insured;

.  .  .  .  .

caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

.  .  .  .  .

"II.  Definitions

(a) Insured. With respect to the bodily injury coverage afforded under this endorsement, the unqualified word 'insured' means:

(1) The named Insured and, while residents of the same household, his spouse and the relatives of either.

.  .  .  .  .

(c) Uninsured Automobile. The term 'uninsured automobile' means:

(1) with respect to damages for bodily injury and property damage an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the North Carolina Motor Vehicle Safety and Financial Responsibility act, neither (i) cash or securities on file with the North Carolina Commissioner of Motor

> Vehicles nor (ii) a bodily injury and property damage liability bond or insurance policy, applicable to the accident with respect to any person or organization legally responsible for the use of such automobile; . . ."

Defendant demurred upon the ground that the facts alleged did not state a cause of action, for that they were not within the coverage provided by the policy. Judge Bone entered judgment sustaining the demurrer and dismissing the action. Plaintiff appealed.

*Vaughan S. Winborne for plaintiff.*
*Bailey, Dixon & Wooten for defendant.*

BRANCH, J. G.S. 20-279.21 (b)(3) in pertinent part provides: "No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of § 20-279.5, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; . . ."

"In North Carolina today all insurance policies covering loss from liability arising out of the ownership, maintenance, or use of a motor vehicle are, to the extent required by G.S. § 20-279.21, mandatory. All which insure in excess of the compulsory coverage are voluntary policies to the extent of the excess." *Insurance Co. v. Roberts,* 261 N.C. 285, 134 S.E. 2d 654. Plaintiff's prayer for recovery is within the limits of the compulsory coverage.

The insured, in order to be entitled to the benefits of the endorsement, must show (1) he is legally entitled to recover damages, (2) from the owner or operator of an uninsured automobile, (3) because of bodily injury, (4) caused by accident, and (5) arising out of the ownership, maintenance, or use of the uninsured automobile.

It is well settled that a demurrer admits, for the purpose of testing the sufficiency of the pleadings, all facts well pleaded in the complaint. If the facts alleged in the complaint, taken as true, and liberally construed in favor of the pleader, are sufficient to state a

cause of action, the demurrer should be overruled. *Glover v. Brotherhood,* 250 N.C. 35, 108 S.E. 2d 78. For the purpose of this decision, it is admitted that Singletary is the owner of an uninsured automobile, and that plaintiff received bodily injuries caused by the accident alleged. Therefore, to decide whether the plaintiff has alleged facts sufficient to legally entitle him to recover damages, we must determine if the injury arose out of the "ownership, maintenance, or use" of the motor vehicle. In making this determination, the same rules of construction apply in construing uninsured motorists coverage as apply in construing a standard liability insurance policy. "The purpose of the statute making uninsured motorist coverage compulsory, it has been said, is to give the same protection to a person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy." 7 Am. Jur., 2d, Automobile Insurance, § 135, p. 461.

"Insurance policies must be given a reasonable interpretation and where there is no ambiguity they are to be construed according to their terms. *Huffman v. Insurance Co.,* 264 N.C. 335, 141 S.E. 2d 496. Where there is ambiguity and the policy provision is susceptible of two interpretations, of which one imposes liability upon the company and the other does not, the provision will be construed in favor of coverage and against the Company. *Mills v. Insurance Co.,* 261 N.C. 546, 135 S.E. 2d 586. . . . In the construction of contracts, even more than in the construction of statutes, words which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage, rather than a restrictive meaning which they may have acquired in legal usage. In the construction of contracts the purpose is to find and give effect to the intention of the contracting parties, if possible." *Insurance Co. v. Insurance Co.,* 266 N.C. 430, 146 S.E. 2d 410.

This Court has not heretofore ruled on a factual situation involving the maintenance or repair of an automobile in connection with coverage under the uninsured motorist provisions of a liability policy. However, we find where other jurisdictions have defined the conditions under which an insured shall be liable on policies employing the terms, "ownership, maintenance or use." In the case of *Morris v. Surety Co.,* 322 Pa. 91, an action on a policy of liability insurance protecting insured from loss arising out of damages by reason of the "ownership, maintenance or use" of described vehicles, where an employee of the assured, while in the act of hammering into place the rim of a wheel on truck covered by the policy, caused

injury to the plaintiff, the Pennsylvania Court held that the policy covered damages to the plaintiff, saying:

"The four terms employed in the policy defining the conditions under which the insurer was to be liable cover a wide and comprehensive field. Each of these terms, "ownership, maintenance, manipulation or use," is general in nature and covers situations which cannot be defined beforehand with exactness. . . . There may be occasions, in fact, when the meanings of these terms overlap and when more than one would cover the same situation. But it is a well-settled rule of construction that no word in a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it. . . . As we view this policy, each of these terms was intended to cover situations distinct and separate from those covered by any other term. Distinctions between them and particularity of application appear in other cases.
. . .

"The word 'maintenance' used in this policy covers all acts which come within its ordinary scope and meaning. To maintain means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition. . . . In a wide variety of situations the word 'maintain' has been taken to be synonymous with 'repair'. . . . Here the act which gave rise to the injury for which a judgment was recovered took place while an employee of the assured was in the act of repairing an essential part of the car and, under the circumstances, was expressly within the term of the policy specified as 'maintenance.' "

In the case of *Fire Insurance Co. v. Insurance Co.*, 275 N.Y.S. 47 (affirmed in 267 N.Y. 576, 196 N.E. 587), defendant's policy agreed to indemnify for loss sustained "as a result of the ownership, maintenance, or use" of a certain automobile. Plaintiff brought action on the policy, pleading that while engaged in doing maintenance work on his automobile, defendant's insured carelessly caused a bucket of gasoline used by him in said work to spill on the floor and spread to a stove used for heating the garage, causing damage to plaintiff's insured's property. The defendant moved for judgment on the complaint on the ground that on its face it did not state facts sufficient to constitute a cause of action. The New York Court held that the facts pleaded constituted a cause of action.

Blashfield Automobile Law and Practice, Vol. 7, § 314.2, pp. 558-559, states:

> "Where the insurance company undertakes by the policy to indemnify the owner of the automobile forming the subject matter of the insurance against claims for damages on account of bodily injuries accidentally suffered by any person by reason of the ownership, maintenance, or use of the vehicle, its obligation is not limited to claims for damages by reason of injuries occurring while the insured himself is personally using or operating the car, but extends to all claims of the nature indicated, that is, all those which are made against him by reason of his ownership or maintenance of the car which produces the accidental injuries in question. *The repair of the vehicle is included in its maintenance within such a provision.*" (Emphasis ours)

A contract is to be construed as a whole and each clause and word must be considered with reference to the other provisions of the agreement and be given effect if possible by any reasonable construction. *Robbins v. Trading Post,* 253 N.C. 474, 117 S.E. 2d 438. Thus, the terms "ownership, maintenance and use" should not be treated as mere surplusage. They were placed in the policy in order to cover situations distinct and separate from any other term.

The key word on this appeal is "maintenance." Webster's New International Unabridged Dictionary defines "maintenance" as "The labor of keeping something (as buildings or equipment) in a state of repair or efficiency: care, upkeep." Giving the word its common, daily, nontechnical meaning, the facts alleged come within the coverage of the policy.

Moreover, if there were ambiguity in the policy which requires interpretation as to whether the policy provisions impose liability, the provisions would be construed in favor of coverage and against the company. *Insurance Co. v. Insurance Co., supra.*

Reversed.